EVA NASEEF, PETITIONER-RESPONDENT, v. CORD, INC., RESPONDENT-APPELLANT, AND 20TH CENTURY TAXICAB ASSOCIATION, DEFENDANT.

Argued September 12, 1966—Decided December 5, 1966.

*Mr. Charles Handler* argued the cause for respondent-appellant (*Mr. David A. Biederman,* on the brief).

*Mr. Bernard I. Kramer* argued the cause for petitioner-respondent.

The opinion of the court was delivered by

SCHETTINO, J. This is a workmen's compensation case involving a cab company and one of its drivers. It is a sequel to *Hannigan v. Goldfarb, 53 N. J. Super.* 190 (*App. Div.* 1958), which held a taxicab leasing arrangement, almost identical to the one involved here, to be an "employment" for the purposes of the Workmen's Compensation Act and, hence, the owner of a cab was held liable to the employee for compensation benefits under the act.

Petitioner's husband, Michael Naseef, died as a result of injuries sustained while operating a taxicab owned by Cord, Inc. (Cord), a member of the 20th Century Taxicab Association (20th Century).

Naseef operated Cord's cab under a written agreement which was in form a "lease." It provided for the payment of $10 daily to respondent Cord from Naseef for the rental of a cab. This payment entitled the driver to the use of the cab for one twelve-hour shift per day. The driver could keep all the fares and tips and would not be subject to the control and direction of the owner. The agreement further provided that the driver was solely liable for income tax, social security, and unemployment insurance payments, and in addition, was required to purchase from 20th Century the gas and oil used in the cab. The driver was required to "operate the taxicab in accordance with the rules and regulations of the 20th Century Association and the ordinance of the City of Newark, New Jersey." Cord was obligated to pay for repairs, replacements, and public liability insurance for its benefit as well as for the driver's benefit.

20th Century is an association of individuals who either own taxicabs or control cabs. As the court pointed out in *Hannigan,* 20th Century on behalf of its members maintains a garage, offices, a two-way radio system to the member cabs nearest the customer, and also keeps up call boxes and open stands for the member cabs. All such cabs are painted with dis-

tinctive "20th Century" colors, as well as the insignia of the association. Admittedly, the purpose is to lead the public to believe that 20th Century is a large organization.

Essentially, the terms of Naseef's contract were the same as the terms of the contract in *Hannigan*. After the decision in *Hannigan* and in an effort to avoid the burdens of Article II, Workmen's Compensation Coverage, *N. J. S. A.* 34:15–7 *et seq.*, the taxi owners added to their "taxicab lease" contracts Paragraph 8, which provided:

> "The parties further agree that the provisions of Article II, Chapter 15, Revised Statutes of New Jersey 34:15–7 et seq., commonly known as the Workmen's Compensation Act, shall not apply to either of them or this contract."

Petitioner, despite Paragraph 8, filed a dependency claim petition for compensation in the Division of Workmen's Compensation on May 1, 1963, alleging that both Cord and 20th Century had been employers of her husband and that he had died while in the course of his employment. Cord denied that it was Naseef's employer and alternatively stated that, assuming an employer-employee relationship, workmen's compensation benefits had been barred to Naseef by Paragraph 8 in accordance with *N. J. S. A.* 34:15–9, which provides for presumptive coverage under Article II in the absence of an election by either the employer or employee or both not to be covered by Article II. In its answer 20th Century denied not only that it was responsible to compensate the cabdriver but also denied that it was engaged in the taxicab business.

The Division of Workmen's Compensation found that the accident was clearly the cause of the death, that, under *Hannigan* Naseef was an "employee" within the contemplation of the Workmen's Compensation Act, that the attempted bar of Article II benefits by Paragraph 8 failed because it was an unsuccessful attempt to contract around Article II as Paragraph 8 makes no reference to the parties being bound by Article I. The Division concluded that 20th Century should be treated, along with Cord, as an employer of Naseef.

The County Court reversed, holding that the agreement between Cord and Naseef provided for notice of an intention not to come under Article II, that *N. J. S. A.* 34:15-9 does not require there be in the agreement or notice an election of remedy under Article I, and that 20th Century was not an employer of Naseef.

The Appellate Division affirmed the dismissal of the claim against 20th Century, but reversed the dismissal of the claim against Cord, and reinstated the Compensation Division's award, making it payable by Cord alone. 90 *N. J. Super.* 135 (1966). The Appellate Division declined to resolve the disagreement between the compensation court and the county court as to the effectiveness of Paragraph 8 as notice of an intention not to be bound by Article II. It held Paragraph 8 inoperative because it was part of the "lease" contract which violates a Newark ordinance prohibiting the rental of taxicabs, stating:

"If we were to enforce this contract, we would be aiding and abetting the violation of the ordinance. It is a rule of general application that any bargain is illegal if its formation or performance is prohibited by statute, and it will not be enforced in the courts." (at *p.* 142)

We granted certification on Cord's petition. 46 *N. J.* 601 (1966). Neither Cord nor Mrs. Naseef filed a petition against 20th Century, and 20th Century is not before us.

Petitioner contends that her husband did not lose his workmen's compensation benefits as he did not fully comprehend Paragraph 8 due to its ambiguity and therefore did not receive the statutory notice of his employer's election that the provisions of Article II would not apply. *N. J. S. A.* 34:15-9.

Cord resists petitioner's claim on the grounds (1) that Cord is the employer of Naseef and Paragraph 8 is an express election by it that the provisions of Article II are not intended to apply, and in the alternative, (2) that Cord is Naseef's lessor and workmen's compensation has no applicability (a rejection of the rule of *Hannigan, supra*).

For the purposes of this appeal, we find it necessary to decide only whether Paragraph 8 and the surrounding circumstances were sufficient to apprise the driver of his rights under the Workmen's Compensation Act. We hold that the driver was not so apprised and we, therefore, affirm.

New Jersey has what is commonly known as an "elective system" of workmen's compensation, 2 *Larson's Workmen's Compensation Law,* §§ 67.00–67.10, *pp.* 146–148 (1961). Under this system either the employer or employee may reject the ordinary system of compensatory non-fault liability (in New Jersey, Article II coverage), thus leaving the employer liable to his employee for only common-law negligence (in New Jersey, Article I coverage).

In the case of Article I coverage, the employee's claim may not be defeated by the defenses of ordinary contributory negligence (see *N. J. S. A.* 34:15–1), assumption of risk (see *N. J. S. A.* 34:15–2; *McGrath v. American Cyanamid Co.,* 41 *N. J.* 272 (1963)), or negligence of a fellow-employee (see *N. J. S. A.* 34:15–2). Most employers are thereby led to accept liability without fault according to Article II of the Workmen's Compensation Act.[1]

The procedure necessary to avoid the non-fault compensation provisions of Article II is stated as follows in *N. J. S. A.* 34:15–9:

---

[1] The New Jersey Workmen's Compensation Act was passed in 1911, at a time when the constitutional validity of the compulsory compensation statutes was still very much in doubt. See *Riesenfeld and Maxwell, Modern Social Legislation, pp.* 134–135 (1950). In that same year, the New York Court of Appeals struck down the New York compulsory act as violative of due process. See *Ives v. South Buffalo Ry. Co.,* 201 *N. Y.* 271, 94 *N. E.* 431 (1911). Thus, the New Jersey Commission on Employers' Liability reported to the Governor and Legislature on January 16, 1911:

"We regret, however, that we are forced to the conclusion that the weight of legal opinions received by correspondence and verbally is against the constitutionality of an act which would compel an employer to compensate an injured employe without regard to the fault or negligence of the employer." *Report to Governor, State of New Jersey Employers' Liability Commission, p.* 9, January 16, 1911. Apprehension that the compulsory act was unconstitutional influenced

"Every contract of hiring * * * shall be presumed to have been made with reference to the provisions of [Article II], and unless there be as a part of such contract an express statement in writing prior to any accident, either in the contract itself or by written notice from either party to the other, that the provisions of [Article II] are not intended to apply, then it shall be presumed that the parties have accepted the provisions of [Article II] and have agreed to be bound thereby."

Not only may the parties enter into an agreement that Article II of the Workmen's Compensation Act shall not apply, but also either the employer or the employee may make this selection so long as he gives written notice to the other prior to a compensable accident. To avoid the last quoted clause that "it shall be presumed * * *," the required notice must be clear and comprehensible so that the recipient of the notice understands the purport of the contract provision or the written notice. *John Hancock Mutual Life Ins. Co. v. Lieb,* 11 *N. J. Misc.* 316, 165 *A.* 720 (*Sup. Ct.* 1933), affirmed o. b. 113 *N. J. L.* 34 (*E. & A.* 1934). See Annotation, "Workmen's Compensation — Withdrawal," 145 *A. L. R.* 921 (1943).

In *John Hancock Mutual Life Ins. Co.,* petitioners were employed by respondent under the presumptive acceptance of Article II coverage. The company decided to discontinue re-

the Legislature and encouraged it to adopt the alternative measure, the elective concept of compensation. See *Berkowitz, Workmen's Compensation, The New Jersey Experience, pp.* 2–3 (1960).

Subsequently, the Supreme Court of the United States upheld the compulsory compensation acts. *New York Central R. R. Co. v. White,* 243 *U. S.* 188, 37 *S. Ct.* 247, 61 *L. Ed.* 667 (1917) ; *Hawkins v. Bleakly,* 243 *U. S.* 210, 37 *S. Ct.* 255, 61 *L. Ed.* 678 (1917) ; *Mountain Timber Co. v. State of Washington,* 243 *U. S.* 219, 37 *S. Ct.* 260, 61 *L. Ed.* 685 (1917). As a result, most large industrial states make coverage under workmen's compensation compulsory. Besides New Jersey, Indiana and Pennsylvania are the only states, whose economy is significantly and comparably industrial, with the elective provision. See 2 *Larson's Workmen's Compensation Law,* Appendix A, Table 7, *pp.* 522–523 (1961).

The purpose of the compensation acts is to provide speedy, dependable financial assistance to the injured employee.

sponsibility under Article II coverage and undertook to serve the requisite statutory notice by a notice which read as follows:

"In accordance with the provisions of section 10 [termination of contract provision] of the Workmen's Compensation law of the State of New Jersey, you are hereby notified of this company's withdrawal, effective February 1st, 1930, of its acceptance of the obligations imposed by the said Workmen's Compensation Act."

The court observed:

"* * * that the foregoing notice undertakes to effect the withdrawal of the company, not only from the obligations imposed by section 2 [Article II] of the Workmen's Compensation Act (elective compensation), but to withdraw its acceptance of the obligations imposed by the act itself. The commissioner held in effect that the company had undertaken to withdraw entirely from its amenability to the Workmen's Compensation act and that this it could not do." (at p. 317)

The company argued that it intended the notice to read as withdrawing the acceptance of such provisions of the act as the company was presumed to have accepted in the first instance, *i. e.,* Article II responsibility. The commissioner disagreed with this contention and held against the company, and the court affirmed.

The court pointed out that the statute provides apt and suitable language for both refusal to accept and for termination of the presumed contract. It stated that the presumption of acceptance of Article II is one which is fundamental in the theory of the statute and there should be no *substantial ambiguity* either in the refusal of the employer to accept the provisions of Article II or in the notice by the employer for the termination of such acceptance before an accident. As the notice on its face appeared to withdraw all benefits of the workmen's compensation law, the court held that there was ambiguity and the notice was not sufficient to achieve what it intended to do, *i. e.,* terminate Article II coverage.

■ Similarly, Paragraph 8 was not effectively written. When examined against the surrounding circumstances, the

failure of Paragraph 8 as notice becomes apparent. The contract was so drawn as to indicate to Naseef that he was an independent contractor and hence, inferentially, that he was not entitled to the benefits of Article I, even though under Paragraph 8 he was not to receive the schedule of benefits of Article II.

In oral communications with new drivers, Cord and 20th Century chose to emphasize that the drivers were independent contractors and not employees. For example, an officer of 20th Century explained that he told each driver, "You are leasing the cab, you are self-employed." And if asked by a cabdriver as to the meaning of Paragraph 8, the same officer would "explain to him that he is a lessee and that he has to pay his own way as far as compensation and everything else is concerned." Additionally, Cord's president testified:

> "I explained to [Naseef] that in the operation of the taxicabs, in the 20th Century, that we leased the cabs to the men for a designated amount, that after that, he would not be eligible for unemployment insurance, workmen's compensation, social security or withholding tax."

Such statements are not only misleading (under *Hannigan* this is not a lessor-lessee relationship under the workmen's compensation statute) but legally incorrect, for if an employer-employee status exists the employee has, at the very least, the advantages of Article I, and therefore the driver does not always "pay his own way as far as compensation is concerned" and is certainly entitled to Article I workmen's compensation rights. Unless each driver was familiar with the *Hannigan* case, *supra,* he could not have known that any benefits were available to him at all.

■■ The ultimate purpose of the Workmen's Compensation Act is to provide a dependable minimum of compensation to insure security from want during a period of disability. It is the understanding of most workers that the benefits of the Compensation Act apply to accidents arising out of and in the course of their employment. Consistent with

its humanitarian ideals, our Workmen's Compensation Act has always been liberally construed in favor of coverage. *Cuna v. Board of Fire Com'rs., Avenel,* 42 *N. J.* 292, 298 (1964). Under this liberal approach, an employer who wishes to deprive his employees of their workmen's compensation benefits under Article II must strictly comply with the statute. Such an election by an employer is insufficient if it fails to give clear written notice that Article II will not apply and if it indicates to the workman that he has no rights whatsoever under either article of the workmen's compensation statute.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.