947 A.2d 1228

LUZ M. CRUZ, PETITIONER–RESPONDENT, v.
CENTRAL JERSEY LANDSCAPING, INC.,
RESPONDENT–APPELLANT.

VALENTYNA HOHL, PETITIONER–RESPONDENT,
v. INSULATED DUCT & CABLE CO.,
RESPONDENT–APPELLANT.

AUDREY BUSH, PETITIONER–RESPONDENT, v. KAUFFMAN
& MINTEER, INC., RESPONDENT–APPELLANT.

RUTH A. HERZER, PETITIONER–RESPONDENT, v. CLASSIC
CARS NISSAN, INC., RESPONDENT–APPELLANT.

Argued February 20, 2008—Decided June 9, 2008.

34

*Richard J. Williams, Jr.,* argued the cause for appellants (*McElroy, Deutsch, Mulvaney & Carpenter,* attorneys; *Michael J. Marone,* of counsel; *Mr. Williams* and *Joseph G. Fuoco,* on the briefs).

*Vicki W. Beyer* argued the cause for respondent Luz M. Cruz (*Stark & Stark,* attorneys).

*Andrew A. Valeriani, Jr.,* argued the cause for respondent Valentyna Hohl.

*George Kotch, Jr.,* argued the cause for respondents Audrey Bush and Ruth A. Herzer (*Mr. Kotch,* attorney; *Robert R. Hanneman, Jr.,* on the letters in lieu of brief).

Justice HOENS delivered the opinion of the Court.

In this matter, we consider four consolidated appeals that raise the question of whether the Legislature's 2004 amendment to the schedule of workers' compensation death benefits was intended to

be applied retroactively. In two of these matters, the Workers' Compensation judge concluded that the amendment was entitled to prospective application only, with the result that both of those claimants were denied an increase in benefits, which they sought to be calculated from the effective date of the amendment. In the other two matters, a different Workers' Compensation judge reached the opposite conclusion, determining that claimants were entitled to an increase in the rate of their benefits as of the effective date of the amendment, even if a final award had already been entered based on the rate schedule previously in effect.

The four separate matters were consolidated for consideration in the Appellate Division, where a divided panel found the arguments in favor of retroactivity more persuasive than those in favor of prospective application. However, one member of the appellate panel dissented, which brings the dispute before this Court on appeal as of right. Because the record demonstrates that the Legislature neither expressly stated, nor implicitly made known, its intention to have the increased benefit levels apply retroactively, we reverse.

## I.

Prior to the enactment of the 2004 amendments, the Workers' Compensation Act, *N.J.S.A.* 34:15-1 to -142 (the Act), set forth a schedule of benefits that applied to all claims arising from the death of a worker. That schedule provided for benefits that varied depending upon the number of the deceased worker's surviving dependents. The benefit rates began at fifty percent of the decedent's wages if he or she were survived by one dependent, and increased with the number of additional dependents up to a ceiling of seventy percent of wages if there were five or more dependents. *N.J.S.A.* 34:15-13(a) to -13(e) (2003), *amended by L.* 2003, *c.* 253, § 1. In 2004, the Legislature amended the statute and replaced the tiered system of benefits with a flat rate of seventy percent of the decedent's wages, to be payable regardless of

whether a deceased worker was survived by one or more dependents. *L.* 2003, *c.* 253, § 1.

There is no dispute that each of the claimants is entitled to death benefits payable under the Act. The sole issue is whether they are entitled to benefits at the amended flat rate of seventy percent of each decedent's gross wages or only to the pre-amendment graduated-tier benefits based on the number of each decedent's dependents. We begin, then, with a recitation of the particular facts and the relevant procedural history of each of the matters before us on appeal.

## A.

### Cruz v. Central Jersey Landscaping, Inc.

Luz Cruz's husband, Jose Antonio Perez, suffered a fatal accident on March 19, 2002, in the course of his employment with Central Jersey Landscaping, Inc. At the time of his death, Perez's gross weekly wages were $542.00. Perez was survived by Cruz and three dependent children. Cruz filed a claim petition for death benefits under the Act on April 10, 2002. Central Jersey Landscaping conceded that the claim was compensable and voluntarily began making payments of $342.30 per week to Cruz, without the entry of any formal award. That weekly amount was calculated based on the statutory rate for four dependents, which was fixed by the statute at sixty-five percent of Perez's wages. *See N.J.S.A.* 34:15–13(d) (2003).

Six months after the statute was amended, Cruz sought a retroactive increase in benefits to seventy percent of her late husband's wages, as would have been awarded in accordance with the newly modified provision. On February 28, 2005, the judge of compensation denied Cruz's petition. In reaching this decision, the compensation judge reasoned that the employer's obligation to pay was fixed, and therefore vested, no later than the date on which it had begun making death benefit payments, if it had not already vested on the date of Perez's death. Because the court

analyzed the application as Cruz's effort to overturn a previously vested right, and because the amendment to the statute included no direction from the Legislature about retroactivity, the court concluded that Cruz's benefits should continue at the rate set forth in the schedule that pre-dated the amendment.

Cruz filed her notice of appeal on April 7, 2005.

### *Hohl v. Insulated Duct & Cable Company*

Gerald F. Hohl died on July 9, 2003, from chronic bronchitis and bladder cancer that he developed as a result of occupational exposure during his employment with Insulated Duct & Cable Company. At the time of his death, his average gross weekly wages were $370.00 and his wife, Valentyna Hohl (Hohl), was his only surviving dependent. The employer voluntarily commenced payment of death benefits of $185.00 per week to Hohl on August 19, 2003, without the entry of any formal award, in accordance with the statutory rate of fifty percent of her decedent's wages. *See N.J.S.A.* 34:15–13(a) (2003).

Following the adoption of the statutory amendment, Hohl sought an increase in her benefits to the newly-enacted rate of seventy percent. On February 28, 2005, the same judge of compensation who on that date had denied the Cruz petition, also denied Hohl's petition, relying on the same rationale.

Hohl filed her notice of appeal on April 7, 2005.

### *Bush v. Kauffman & Minteer, Inc.*

Norman Bush died on February 1, 2002, from chronic obstructive pulmonary disease contracted as a result of his employment with Kauffman & Minteer, Inc. At the time of his death, his average gross weekly wages were $419.40 and his only surviving dependent was his wife, Audrey Bush (Bush). She filed a claim for death benefits in May 2002, seeking compensation at the statutory rate of fifty percent of her late husband's wages, for a weekly payment of $209.70. *See N.J.S.A.* 34:15–13(a) (2003).

Despite its initial denial, Kauffman & Minteer later conceded that the claim was compensable, leaving the retroactive application

of the amendment as the only disputed issue. On December 22, 2004, a different judge of compensation reached the opposite conclusion from that articulated by the judge who had decided the Cruz and Hohl petitions. That judge, in granting Bush's petition, concluded that the amendment should be applied retroactively. The judge found that Bush's employer had presented no evidence that manifest injustice would result from a retroactive application of the amendment. Moreover, the judge reasoned that the Legislature's use of the phrase "except as hereinafter provided" in the amended statutory language, was a reference to a "timeframe" that "conveys the [L]egislature's explicit reminder that the [L]egislature establishes the applicable calculation of dependency benefits and can change such in the future." Bush was therefore awarded death benefits at a rate of seventy percent of her late husband's wages, beginning on January 14, 2004, the effective date of the statutory amendment, and continuing thereafter.

*Kauffman & Minteer filed its notice of appeal on April 27, 2005.*

### *Herzer v. Classic Cars Nissan, Inc.*

Francis J. Herzer died on March 26, 2003, from coronary artery disease and renal failure developed as a result of occupational exposure during his employment with Classic Cars Nissan, Inc. At the time of his death, his average gross weekly wages were $260.00 and his only surviving dependent was his wife, Ruth Ann Herzer (Herzer). Herzer filed a successful claim for death benefits and, on January 8, 2004, the Workers' Compensation court entered an order approving a settlement in Herzer's favor and awarding benefits. The final award set Herzer's benefit rate at fifty percent of her late husband's wages, in accordance with *N.J.S.A.* 34:15–13(a) (2003).

Following entry of the judgment, the employer, Classic Cars Nissan, Inc., commenced payment to Herzer at that rate, resulting in a weekly payment of $130.00. Although that matter had already been resolved by the entry of the order approving the settlement, after the statute was amended, Herzer sought to increase her benefits to the new seventy percent rate. The judge

of compensation to whom her matter was assigned was the same one who had decided the Bush claim. Relying on the rationale expressed in his previously-announced decision in that matter, the judge granted Herzer's petition. He therefore reopened the judgment and awarded her increased benefits at a rate of seventy percent of her late husband's wages, retroactive to January 14, 2004, the effective date of the amendment to the statute.

Classic Cars Nissan, Inc. filed its notice of appeal on May 26, 2004.[1]

## B.

These four matters were consolidated for purposes of appeal. *Cruz v. Cent. Jersey Landscaping, Inc.*, 393 *N.J.Super.* 34, 38, 922 *A.*2d 770 (App.Div.2007). The Appellate Division, in a split decision, determined that the amendment to the Act that created a uniform rate for death benefits was entitled to retroactive application. Applying this Court's previously articulated two-part test for retroactivity, *see Twiss v. State, Dep't of Treasury, Office of Fin. Mgmt.*, 124 *N.J.* 461, 467, 591 *A.*2d 913 (1991), the majority of the panel reasoned that because the Legislature did not explicitly limit the amendment to future claims, the new rate was intended to apply retroactively to claims accruing prior to the amendment's January 14, 2004, effective date. *Cruz, supra,* 393 *N.J.Super.* at 42–47, 922 *A.*2d 770. Although recognizing that employers had a significant interest in being required to make only the lower death benefit payments based on the schedule, the majority concluded that the employers' interest was not a vested right and that

---

[1] Herzer filed a cross-appeal, in which she challenged the award of attorney's fees that she had received as insufficient. The Appellate Division declined to interfere with that award, concluding that it was "not manifestly inadequate or the product of an abuse of discretion." *Cruz v. Cent. Jersey Landscaping, Inc.*, 393 *N.J.Super.* 34, 51, 922 *A.*2d 770 (App.Div.2007) (citing *Akef v.BASF Corp.*, 305 *N.J.Super.* 333, 341, 702 *A.*2d 519 (App.Div.1997)). As Herzer did not file a petition for certification, that issue is not before this Court.

increasing payments did not result in a manifest injustice. *Id.* at 49, 922 *A.*2d 770.

The dissenting judge disagreed. He explained that because the Legislature neither explicitly nor implicitly demonstrated an intent to apply the amendment retroactively, in light of "the general principle that a statute takes effect as of the time it goes into effect, and the general principle that statutes should not be applied retroactively, [he was] convinced that the amendment does not apply retroactively." *Id.* at 54–55, 922 *A.*2d 770 (Holston, J.A.D., dissenting). Because of the dissent, these four consolidated cases have come before us on appeal as of right. *R.* 2:2–1(a)(2).

## II.

We have recently explained the essential principle of our Workers' Compensation laws:

New Jersey's long-standing and comprehensive statutory scheme of workers' compensation coverage is "designed to establish a no fault system of compensation for workers who are injured or contract a disease in the course of employment." [*Fitzgerald v. Tom Coddington Stables*, 186 *N.J.* 21, 30, 890 *A.*2d 933 (2006) (quoting *Brock v. Pub. Serv. Elec. & Gas Co.*, 325 *N.J.Super.* 582, 588, 740 *A.*2d 167 (App.Div.1999), *certif. denied*, 163 *N.J.* 77, 747 *A.*2d 285 (2000)).]

Further, we have long recognized that this system for the compensation of injured workers "is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." *Torres v. Trenton Times Newspaper*, 64 *N.J.* 458, 461, 317 *A.*2d 361 (1974); *see Fitzgerald, supra*, 186 *N.J.* at 30, 890 *A.*2d 933. In considering questions relating to workers' compensation in general, we have adhered to our understanding that the "ultimate purpose ... is to provide a dependable minimum of compensation to insure security from want during a period of disability." *Fitzgerald, supra*, 186 *N.J.* at 31, 890 *A.*2d 933 (quoting *Naseef v. Cord, Inc.*, 48 *N.J.* 317, 325–26, 225 *A.*2d 343 (1966)).

Although we are guided by these general principles, in determining the effect to be given to the 2004 amendments to the

statute, our essential task is to understand and give effect to the intent of the Legislature. *See Bunk v. Port Auth. of N.Y. & N.J.,* 144 *N.J.* 176, 194, 676 *A.*2d 118 (1996) (construing intent of Legislature's amendment to Workers' Compensation Act). In doing so, we look first to the plain language of the amendment, seeking further guidance only to the extent that the Legislature's intent cannot be derived from that analysis. *Ibid.* In the event that language is not clear and unambiguous on its face, we look to other interpretive aids to assist us in our understanding of the Legislature's will. *See, e.g., id.* at 192–94, 676 *A.*2d 118 (reviewing related recent amendments and committee statements); *Panzino v. Cont'l Can Co.,* 71 *N.J.* 298, 301–03, 364 *A.*2d 1043 (1976) (relying on sponsor's statement for guidance).

### A.

Our Workers' Compensation Act requires employers to compensate employees who are injured by an accident "arising out of and in the course of" employment if the accident is "natural[ly] and proximate[ly] cause[d]" by the "actual or lawfully imputed negligence of the employer" and is not due to the employee's own willful negligence. *N.J.S.A.* 34:15–1. The Act also applies to any claim for the death of an employee, *N.J.S.A.* 34:15–4, arising under statutes governing wrongful death claims generally, *N.J.S.A.* 2A:31–1 to –6.

The Act includes specific provisions that govern calculation of the amount of compensation to be paid to dependents of an employee who dies during the course of his or her employment. *N.J.S.A.* 34:15–13. It is these provisions, and the Legislature's 2004 amendment to these payment calculations, that are at the core of the appeals before us. At the time of the death of each claimant's decedent, the statute included a schedule for calculating the benefits payable, expressed as a percentage, that varied based upon the number of surviving dependents. *See N.J.S.A.* 34:15–13(a) to –13(e) (2003). The applicable range provided for benefits of: fifty percent of wages for one dependent, *N.J.S.A.* 34:15–13(a)

(2003); fifty-five percent of wages for two dependents, *N.J.S.A.* 34:15–13(b) (2003); sixty percent of wages for three dependents, *N.J.S.A.* 34:15–13(c) (2003); sixty-five percent of wages for four dependents, *N.J.S.A.* 34:15–13(d) (2003); and seventy percent of wages for five or more dependents, *N.J.S.A.* 34:15–13(e) (2003).

On January 14, 2004, the Legislature enacted an amendment to the statute that revised the formula for calculating death benefits. *L.* 2003, *c.* 253, § 1. The amended version, which reflects the current state of the law, provides: "Except as hereinafter provided, in case of death, compensation shall be computed, but not distributed, on the following basis: a. for one or more dependents, [seventy percent] of wages." *N.J.S.A.* 34:15–13; *L.* 2003, *c.* 253, § 1. The subsections of the Act, that had previously set forth the tiered schedule based on number of dependents, were amended to read: "(Deleted by amendment, P.L. 2003, c. 253.)" *N.J.S.A.* 34:15–13(b) to –13(e). The amendments, which were enacted on January 14, 2004, were specifically designed to "take effect immediately," *L.* 2003, *c.* 253, § 4. There are several other subsections of *N.J.S.A.* 34:15–13, none of which was affected by the 2004 amendment. Notably among them is the general rule that death benefits do not continue indefinitely, but terminate after 450 weeks, unless the decedent is still then survived by a minor dependent. *N.J.S.A.* 34:15–13(j).

The dispute among the parties centers on what the Legislature intended when it provided that the amendment would "take effect immediately." Each of the claimants argues that this language signals the complete elimination of the tiered system of benefits as of the effective date of the amendment. They contend that as a result each of them is entitled to the newly-enacted single benefit level instead of the benefits available in the original tier to which each of them previously was assigned based on the number of surviving dependents. More specifically, three of the claimants, namely, Cruz, who as of the date of the amendment had a pending petition and was accepting voluntary payments, Hohl, who also was accepting voluntary payments but did not have a pending

petition, and Bush, who had a pending petition but had not received voluntary payments, assert that they are entitled to the benefit of the higher payment amounts payable as of the amendment's effective date. The fourth claimant, Herzer, argues that she is entitled to have her previously adjudicated matter reopened and is entitled to the benefit of the higher payment rate even though, at the time when the amendment became effective, her award had already been finalized.

In response, the employers assert that the language chosen by the Legislature only supports the award of the higher benefits to claimants whose decedents died on or after the effective date. They argue that the Legislature could not have intended to apply the new benefit amounts to pending claims because that would result in the amendment, *sub silentio*, reopening all previously entered awards so as to benefit all claimants. The employers contend that the Legislature could not have intended to work such a far reaching impact on settled claims without some explicit indication that this was its anticipated outcome.

We turn, then, to our consideration of what the Legislature intended when it amended the benefits to be awarded under the Act.

## B.

We "have long followed a general rule of statutory construction that favors prospective application of statutes." *Gibbons v. Gibbons*, 86 *N.J.* 515, 521, 432 *A.*2d 80 (1981) (footnote omitted). This preference is based on our long-held notions of fairness and due process. *Id.* at 522, 432 *A.*2d 80; *see Landgraf v. USI Film Prods.*, 511 *U.S.* 244, 266, 114 *S.Ct.* 1483, 1497, 128 *L.Ed.*2d 229, 253 (1994) ("The Due Process Clause ... protects the interests in fair notice and repose that may be compromised by retroactive legislation...."); *Rothman v. Rothman*, 65 *N.J.* 219, 225, 320 *A.*2d 496 (1974) ("[R]etroactive application ... may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest

to be promoted sufficiently outweighs in importance the private right to be impaired.").

Although the rule favoring prospectivity is, "a sound rule of statutory interpretation," *Rothman, supra,* 65 *N.J.* at 224, 320 *A.*2d 496; *accord* Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 *Harv. L.Rev.* 692, 693 (1960), "if the Legislature expresses an intent that the statute is to be applied retroactively, the statute should be so applied." *Oberhand v. Dir., Div. of Taxation,* 193 *N.J.* 558, 571, 940 *A.*2d 1202 (2008) (citing *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80.) As we have recently commented, the Legislature may express its intent explicitly or by implication "in that 'retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation.'" *Ibid.* (quoting *Gibbons, supra,* 86 *N.J.* at 522, 432 *A.*2d 80).

Consequently, the preference for prospective application is not applied mechanistically to every case. *Rothman, supra,* 65 *N.J.* at 224, 320 *A.*2d 496. To be sure, retroactivity is appropriate, in general, when it is expressed, *Gibbons, supra,* 86 *N.J.* at 522–23, 432 *A.*2d 80; *see Nobrega v. Edison Glen Assocs.,* 167 *N.J.* 520, 536, 772 *A.*2d 368 (2001) (requiring an "unequivocal expression of . . . legislative intent" (quoting *Dewey v. R.J. Reynolds Tobacco Co.,* 121 *N.J.* 69, 95, 577 *A.*2d 1239 (1990))), when an amendment is curative, *Gibbons, supra,* 86 *N.J.* at 523, 432 *A.*2d 80, or when the expectations of the parties so warrant, *ibid.* Only if one of these grounds is present, will we give a statute retroactive effect.

C.

We begin by observing that the Legislature's amendment must be understood in light of our pre-existing interpretation of the Act's death benefits. Long before the Legislature enacted the amendment altering the benefit rates, we held, in *McAllister v. Board of Education, Town of Kearny,* that a claim for death

benefits accrues, and the rights thereto vest, on the date of death. 42 *N.J.* 56, 59–60, 198 *A.*2d 765 (1964) (benefits allowed on date of death govern rather than lesser rates applicable as of the time of the original injury). As part of our analysis we presume, as we must, that the Legislature "is . . . aware of judicial construction of its enactments," *N.J. Democratic Party, Inc. v. Samson,* 175 *N.J.* 178, 195 n. 6, 814 *A.*2d 1028 (2002) (citing *Brewer v. Porch,* 53 *N.J.* 167, 174, 249 *A.*2d 388 (1969)), and we therefore review the amendment in light of this Court's prior reasoning regarding the dates for accrual of claims and vesting of rights set forth in *McAllister.*

There is little in the way of legislative history that informs us about the meaning and intent of the 2004 amendment. The bill that was eventually enacted was one of several bills introduced beginning in 2000, each of which would have replaced the tiered system of benefits with a uniform rate to be paid regardless of the number of dependents, some providing for a one hundred percent wage benefit. *See, e.g., Senate Bill No. 1416* (Mar. 26, 2002); *Assembly Bill No. 1853* (Feb. 21, 2002); *Senate Bill No. 886* (Feb. 7, 2000); *Assembly Bill No. 1125* (pre-filed for 2000).

The Senate bill and its Assembly counterpart that were eventually passed by the Legislature provided for a uniform death benefit rate of seventy percent and specified that the change would take effect immediately. Although this benefit rate was lower than that which some of the other bills had proposed, and although it did not embrace the language included in the other bills that was explicitly prospective, there is no evidence that the Legislature's decision to enact this bill was intended to be an affirmative rejection of any of the provisions of those other proposed bills. Nor is the fact that the Legislature did not alter the bill's wording in response to testimony suggesting that the language about the effective date could be clearer, *see Hearing on Senate Bill No. 1522 Before the Senate Labor Comm.* (Dec. 9, 2002), significant to our understanding of legislative intent. The mere fact that witnesses spoke in favor of the bill or raised their

own interpretations about how the language might have been written, and that this was met by silence of the Legislature in response, is an insufficient basis on which to read into the amendment a far reaching impact that it would not otherwise have had. Those facts and those statements tell us only what the speaker or the witness believed to be the case; they say nothing about what the Legislature meant by the words it chose to include in the amendment. Rather, in light of our previous determination that the claim accrues and the rights vest on the date of death, we conclude that the Legislature intended its language to be understood in that context.

Indeed there is nothing in the amendments or in the sponsors' statements that suggests that the Legislature intended to give the new benefit level retroactive effect of any kind. We certainly see no basis in the legislative history, and in an interpretive framework that includes our prior holding that vesting occurs on the date of death, to conclude that the Legislature intended to effect a reopener of settled awards. Nor is there anything in the directive that the act "shall take effect immediately" to suggest retroactivity. On the contrary, these words bespeak an intent contrary to, and not supportive of, retroactive application. *Lombardo v. Revlon, Inc.*, 328 *N.J.Super.* 484, 490–91, 746 *A.*2d 475 (App.Div.2000). Similarly, it cannot be said that the Legislature's inclusion of the general phrase "except as hereinafter provided" was intended, without more, by the Legislature to operate as an affirmative grant of a right to retroactive relief.

We derive additional support for our conclusion that the Legislature intended only a prospective application of the new benefit rates from our analysis of the fiscal note that accompanied the bill. It makes no mention of the impact that a retroactive application would have entailed. Instead, the fiscal note calculates only the projected future impact of the increase using estimates and assumptions about the average anticipated claims. It contains no analysis of the impact that the amendment would have regarding an increase in the benefits payable on existing or previously

settled claims. The fiscal note itself, therefore, suggests that the Legislature did not intend that the increased benefits would be available to existing or pending claims. Indeed, although a fiscal note with a plain analysis of a bill's retroactive effect would support the conclusion that the Legislature so intended, *see Harris v. Branin Transp., Inc.*, 312 *N.J.Super.* 38, 44–45, 711 *A.*2d 331 (App.Div.), *certif. denied*, 156 *N.J.* 408, 719 *A.*2d 640 (1998), nothing in this fiscal note so suggests. The implication, then, is that the Legislature did not intend that the increased benefits would be available to dependents with previously pending claims.

Taken together, we understand the Legislature's direction that the amendment take effect immediately to mean that the increased benefit rates will apply to claims that arise immediately after the effective date of the amendment to the Act. In so concluding, we are of course mindful of our usual rules governing retroactivity, which do not suggest a contrary result here. We discern no reason to expand our retroactivity rules to extend the reach of this amendment beyond that which the Legislature directed.

We reach this result for a further, more practical, reason. As the Herzer claim demonstrates, if we interpret the amendment to apply broadly, it would reach even beyond pending and non-finalized claims. That analysis would raise the specter that all of the awards that have been entered in years past would be reopened to permit an increase in benefits as of January 14, 2004. In the absence of an unambiguous directive that the Legislature so intended, we cannot conclude that the amendment was expected to be applied in such an expansive fashion.

### III.

The judgment of the Appellate Division is reversed. The orders in *Cruz* and *Hohl* are therefore reinstated, the order in *Bush* is reversed and the matter remanded for further proceedings in the Workers' Compensation court, and the order in *Herzer* is vacated.

*For reversal*—Chief Justice RABNER and Justices LONG, ALBIN, WALLACE, RIVERA–SOTO, and HOENS—6.