45 N.J. Super. 167 (1957)
131 A.2d 802
ROBERT PARKER, PLAINTIFF-APPELLANT,
v.
MICHAEL W. ZANGHI AND VINCENT RANDO, INDIVIDUALLY AND TRADING AS AMERICAN CONSTRUCTION & WRECKING CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1957.
Decided May 9, 1957.
*168 Before Judges CLAPP, JAYNE and FRANCIS.
*169 Mr. George F. Kugler, Jr., argued the cause for plaintiff-appellant (Messrs. Brown, Connery, Kulp & Willie, attorneys; Mr. Horace G. Brown, of counsel).
Mr. Peter J. Devine argued the cause for defendants-respondents (Messrs. Orlando, Kisselman & Devine, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was brought against defendants Michael W. Zanghi and Vincent Rando, individually and as partners doing business as the American Construction & Wrecking Co., to recover for personal injuries sustained by the plaintiff, allegedly as a result of Rando's negligence. The plaintiff was struck by a tractor operated by Rando on partnership business in Philadelphia, Pennsylvania. At the conclusion of the testimony, the trial court dismissed the case. Plaintiff appeals.
Plaintiff presents two points on the appeal. He claims, first, that the trial court erred in holding that he was a "statutory employee" of the defendant partners under the Pennsylvania Workmen's Compensation Act and therefore barred from maintaining a common law action against them; second, even if he was a statutory employee, nevertheless the employer was the partnership, a separate entity, and the partner Rando was a third person who could be held in this common law action.
The Wrecking Company was awarded a contract by the Philadelphia Housing Authority under which the company agreed to buy, raze and remove six two-story houses located in Philadelphia. To secure the contract, the Wrecking Company had bid (agreed to pay) $1,010.10. The first house was razed by the company by way of experiment, in an endeavor to find out whether it would be more practical to take the other houses down in panels or salvage them as a whole. Some of the materials secured from the first house were apparently sold on the site; some (it is rather important to note) were delivered by the company in its two *170 dump trucks to purchasers in Philadelphia; and some were transported in these trucks to the company's yard in Atlantic City, New Jersey, for sale there. Defendants lived and had their place of business in Atlantic City.
As a result of this experiment, the Wrecking Company agreed to sell the first floors and roofs of the other five houses as one-story dwellings to a purchaser at Cardiff, New Jersey, and to deliver them to him there. However, not having the huge low-boy tractor-trailers necessary for the hauling of an entire dwelling unit intact, it made an agreement with S. & E. McCormick, Inc. which had done that work. On the day of the accident plaintiff, one of McCormick's employees, entered upon the housing site in order to back one of McCormick's tractor-trailers under a dwelling unit, which had been or was being jacked up for that purpose. There was, however, an obstruction on the ground, and Rando sought to remove it with one of the Wrecking Company's shovel-tractors, but that tractor slipped, crushing plaintiff against his own trailer.
Were the defendants the "statutory employers" of the plaintiff under the applicable Pennsylvania statutes? 77 Purdon's Pa. Stat. Ann., §§ 25, 52 and 462. To constitute a person a statutory employer, several conditions must exist (McDonald v. Levinson Steel Co., 302 Pa. 287, 153 A. 424, 426 (Sup. Ct. 1930)), of which we are concerned here with only two. First  to use the words of the statute (77 Purdon's Pa. Stat. Ann., § 25)  it must appear that McCormick was:
"a sub-contractor to whom a principal contractor [the defendants] has sub-let any part of the work which such principal contractor has undertaken." (Italics added.)
Defendants had contracted to remove from the site the six houses and the material composing them, and we think it can fairly be said that they "sublet" to McCormick "part of the work which" they had "undertaken." McCormick, by agreeing to haul off the roofs and first stories of five *171 houses, took over a substantial part of the removal operation. Plaintiff does not lay great stress on this point.
Second, it must appear that the defendants, the alleged statutory employer, permitted the plaintiff to enter upon the housing site 
"for the performance upon such premises of a part of the employer's regular business entrusted to" McCormick. (Italics added.) 77 Purdon's Pa. Stat. Ann., § 52.
It clearly was a part of defendants' regular business to sell the salvage; in this way they secured compensation for their services in razing and removing the houses  indeed, sufficient compensation to induce them to pay $1,010.10 for the contract. Besides, it clearly was a part of their regular business as house-wreckers to see to it that the houses and the material composing them were removed from the premises. On the other hand, it must be taken as true on this motion for dismissal (there was some conflict in the testimony) that defendants had never rented tractor-trailers and never done any heavy hauling.
It appears beyond any real question that the removal of salvage in small units through dump trucks for purposes of sale was a part of the defendants' regular business. The question is whether it ceased to be a part of their regular business when, doubtless in order to secure additional profit, the removal was effected by transporting a whole dwelling unit intact on a trailer-tractor.
A new variation in the performance of the statutory employer's ordinary business or a new operation in that business should not, it seems to us, deprive the statutory employee of coverage, provided the new activity lies within the main stream of the employer's usual operations. Here the tractor-trailer can perhaps be looked upon merely as a new tool in defendants' ordinary salvaging business. In any event, if a doubt exists as to whether we should look broadly or narrowly at defendants' operations in determining what is the nature of their business, we think the broad view should be taken, for the Workmen's Compensation Act *172 is to be construed liberally so as to bring the case at hand within its coverage. Davis v. City of Philadelphia, 153 Pa. Super. 645, 35 A.2d 77, 80 (Super. Ct. 1943).
We find no Pennsylvania case bearing on these principles except Davis. There an auctioneer had been engaged to auction off coal mine machinery belonging to a bankrupt. Wishing to have the machinery brought up from the mine to the surface so as to display it to prospective purchasers, the auctioneer entered into an arrangement with a former operator of the mine to use some of its employees, including claimant, for that purpose. The court, noting that the display of the articles to be sold was part of the ordinary business of an auctioneer selling a bankrupt's assets, held the auctioneer was a statutory employer of the claimant. The court said:
"While the removal of machinery from a coal mine may be a comparatively rare occurrence, it is none the less a part of the auctioneer's regular business if done in connection with the sale at auction of the property of a bankrupt. Assuming the employment was casual, it was nevertheless within the accepted category of regular course of business * * *."
Here was a very unusual undertaking on the part of the auctioneer, yet one which was held to have arisen (as we have put it above) within the main stream of the auctioneer's usual operations. Cf. further Haytko v. William Crabb & Co., 17 N.J. Super. 95 (Cty. Ct. 1951, an opinion by Judge Francis).
For the reasons indicated, we think plaintiff was a "statutory employee." The second issue in the case is whether the defendant Rando is a third person who can be held for his own negligence in this common law action. Plaintiff's original complaint was against Zanghi and Rando, individually and as partners; but an amended complaint added a count against Rando solely. One of the underlying questions here is whether, as plaintiff claims, the employer-partnership is to be looked upon for the purposes of the Workmen's Compensation Act as a legal entity detached *173 from its members and whether, therefore, each of the partners is, in law, a third person. Of course, if the entity theory is rejected and the partners are held to be the plaintiff's employers, then it follows  and there is no dispute on the point  that Rando is immune from suit here.
Plaintiff contends that this question whether the cause of action against Rando with respect to his negligence has been abolished by the Workmen's Compensation Act, is a matter to be determined by New Jersey law. This is to be doubted. See Restatement, Conflicts of Laws, § 401, 1948 supplement; Stacy v. Greenberg, 9 N.J. 390, 399 (1952). It is not urged by plaintiff that under the New Jersey law a partnership, formed here, has a separate jural existence for all purposes and that Pennsylvania should therefore give recognition to it in applying its Workmen's Compensation Law. Cf. Restatement, Id., § 154.
However, we need not decide the conflicts question. So far as we have discovered, Pennsylvania has not dealt with the status of a partnership under its Workmen's Compensation Act. We shall assume that the Pennsylvania law on this point is controlling and shall also assume (thus, in effect, assuming the point plaintiff is contending for) that it is the same as New Jersey law; that is to say, that under the Pennsylvania law an employer-partnership is to be given an individuality of its own for purposes of the workmen's compensation statute. Felice v. Felice, 34 N.J. Super. 388 (App. Div. 1955). The Pennsylvania Workmen's Compensation Act, 77 Purdon's Pa. Stat. Ann., § 21, like the New Jersey Act, N.J.S.A. 34:15-36, defines employers as "natural persons, partnerships," etc.
However, even if the partnership itself is the employer, the question still remains whether a plaintiff should be barred from suing at common law an individual partner for his allegedly tortious act committed (as was Rando's act here) in the ordinary course of the partnership business. The Pennsylvania statute, after declaring that under certain circumstances an employer will be presumed to have agreed to pay workmen's compensation, goes on to provide:
*174 "Such agreement * * * shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof, other than as" fixed in the Workmen's Compensation Act. (Italics added.) 77 Purdon's Pa. Stat. Ann., § 481.
Cf. the quite similar language found in N.J.S.A. 34:15-8. These statutes declare that the parties having rights to damages (reference is made here to the employees) are obliged to surrender those rights; but they do not specify the persons who are to be discharged from liability for the damages.
Nor does the section of the Pennsylvania Workmen's Compensation Act dealing with the employer's right of subrogation against third parties furnish any specification as to who these third parties are (77 Purdon's Pa. Stat. Ann., § 671):
"Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee * * * against such third party to the extent of the compensation payable under this article by the employer * * *."
Notwithstanding this statute, the right of action against the third party remains in the injured employee. Scalise v. F.M. Venzie & Co., 301 Pa. 315, 152 A. 90, 92 (Sup. Ct. 1930). Further, see N.J.S.A. 34:15-40.
While there is no good reason to put any strain on this legislation so as to relieve any person from liability for a tort he has committed against the employee, nevertheless we should be mindful of the underlying objects of the legislation so as not to contract its terms unwarrantably. Caputo v. Best Foods, 17 N.J. 259, 264 (1955).
We think the problem can be brought out more sharply if, turning to the law of partnership, we consider who is liable for a partner's tort and also who is liable for workmen's compensation when a partnership is the employer. Some argument perhaps can be made that under the Uniform Partnership Act (which is in force in Pennsylvania), taking *175 it literally, a partnership is liable as an entity for the negligent act of a partner committed in the ordinary course of partnership business. 59 Purdon's Pa. Stat. Ann., § 35 (cf. § 11); N.J.S.A. 42:1-13 (cf. 42:1-6); but cf. Caplan v. Caplan, 268 N.Y. 445, 198 N.E. 23, 101 A.L.R. 1223 (Ct. App. 1935). In any event, it is clear that under that act the partners are liable for such negligence jointly and severally. 59 Purdon's Pa. Stat. Ann., § 37; N.J.S.A. 42:1-15; Caplan v. Caplan, supra. Hence, if under the circumstances Rando may be held for the alleged tort here, then Zanghi is also answerable for it.
It is also clear that Zanghi and Rando are liable to pay workmen's compensation, even though it may be said (as we are assuming here) that the payment of compensation constitutes an obligation "of the partnership" as a separate entity. 59 Purdon's Pa. Stat. Ann., § 37; N.J.S.A. 42:1-15; cf. Palle v. State Industrial Commission of Utah, 79 Utah 47, 7 P.2d 284, 288, 81 A.L.R. 1222 (Sup. Ct. 1932).
The question presented by the statute which requires an employee to surrender his common law cause of action in return for workmen's compensation, thus resolves itself into this: was it intended to leave him a right to recover at the common law from the very persons, or from at least one of those persons (Rando), who are answerable for the payment of workmen's compensation? We think not. We therefore conclude that even though (as we are assuming here) the partnership is itself the employer under the Pennsylvania Workmen's Compensation Act, nevertheless in view of the law rendering the partners liable for the workmen's compensation, the act should be construed as requiring the employee to surrender any common law cause of action in tort, which he holds against the partners, or either of them, because of a compensable injury.
This result is, of course, in accord with that reached in jurisdictions which refuse to look upon the partnership as an entity for the purposes of the Workmen's Compensation Act. Williams v. Hartshorn, 296 N.Y. 49, 69 N.E.2d *176 557 (Ct. App. 1946); cf. Reed c. Industrial Accident Comm., 10 Cal.2d 191, 73 P.2d 1212, 114 A.L.R. 720 (Sup. Ct. 1937); Brollier v. Van Alstine, 236 Mo. App. 1233, 163 S.W.2d 109 (Ct. App. 1942). Contra, Monson v. Arcand, 244 Minn. 440, 70 N.W.2d 364 (Sup. Ct. 1955).
In our view the trial court gave the right answer to the two questions presented by the appeal.
Affirmed.