17 A.3d 855

NICKEMEA WHITFIELD, PLAINTIFF–RESPONDENT, v. BONAN-
NO REAL ESTATE GROUP, TRYON MANAGEMENT CORP.,
ANTONIO VALLARI AND VALLARI LAWN SERVICE, DEFEN-
DANTS, AND TIME WARNER ENTERTAINMENT AD-
VANCE/NEWHOUSE PARTNERSHIP A/K/A TWFANCH–ONE
CO., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 26, 2010—Decided May 12, 2011.

548

Before Judges CARCHMAN, MESSANO and WAUGH.

*Charles Dewey Cole, Jr.*, argued the cause for appellant (*Newman Myers Kreines Gross Harris*, attorneys; *Mr. Cole*, on the brief).

*George B. Wolfe* argued the cause for respondent.

The opinion of the court was delivered by

MESSANO, J.A.D.

This appeal involves a question of first impression in New Jersey. Specifically, may plaintiff pursue a third-party action in negligence against a general partnership after receiving workers' compensation benefits from her employer, a partner in that partnership? We conclude that the immunity provided by *N.J.S.A.* 34:15–8 does not bar plaintiff's third-party action against the partnership. We therefore affirm.

I.

The following undisputed facts are apparent from the motion record. Plaintiff was employed by Time Warner Entertainment Co., L.P. (Time Warner), and worked at 200 Roosevelt Place in Palisades Park. On March 9, 2005, at approximately 7:30 p.m., she was injured when she slipped on black ice in the parking lot. Plaintiff filed a workers' compensation petition naming Time Warner as the respondent and subsequently received workers' compensation benefits.

Plaintiff also filed suit in the Law Division. In her third amended complaint filed on January 14, 2009, plaintiff named Bonanno Real Estate Group and Time Warner Entertainment-Advance/Newhouse Partnership a/k/a TWFanch-one Co. (TWF) as defendants, alleging that they "owned, managed, supervised, and ... control[led]" the property in a negligent manner. She named Tryon Management Corp., Antonio Vallari, and Vallari Lawn

Service as defendants alleging that they "were employed to do snow removal," and did so negligently.[1]

TWF moved for summary judgment relying upon the certification of Riina Tohvert, "corporate legal administrator for Time Warner." Tohvert certified that plaintiff was an employee of Time Warner and TWF was "the lessee of the property located at 200 Roosevelt Place." Tohvert then described the relationship between the two entities:

[TWF] ... is a Delaware general partnership. Its managing general partner is Time Warner ...; it owns 98.99% of [TWF]. The remaining 1.01% is owned by Time Warner Cable Holdings Inc. Time Warner [Cable] Holdings Inc. is 100% owned by Time Warner....

In response to plaintiff's discovery requests, TWF had further asserted that it had no employees and did not maintain workers' compensation insurance.

TWF argued that it was immune from suit pursuant to *N.J.S.A.* 34:15-8 because "the immunities ... that ... the partner has pass as well to the partners in the partnership." Denying the motion, the judge concluded that Time Warner and TWF were separate and distinct entities. He further reasoned that TWF should not be permitted to benefit from being a separate entity from Time Warner while at the same time avoiding the consequences. He denied summary judgment.

The parties subsequently entered into a consent judgment settling plaintiff's claim for $180,000 and dismissing her complaint against TWF and all remaining co-defendants.[2] The consent judgment expressly reserved TWF"s right to seek review of the order denying summary judgment. In a separate settlement agreement, plaintiff and TWF agreed that "[i]f the final

---

[1] Plaintiff also included a count alleging that the property was a "nuisance."

[2] We gather from the record that TWF had agreed to provide a defense and indemnification to defendant Bonanno Real Estate Group, that defendant Tryon Management Corp. settled with plaintiff for an additional $2500, and that defendants, Antonio Vallari and Vallari Lawn Service, settled with plaintiff for an additional $1500.

Appellate Court to hear the appeal reverses, modifies or otherwise disturbs the order denying summary judgment, th[e] stipulated settlement that [was] part of the consent judgment [would be] vacated.... And [TWF] would not be obligated to carry out the terms of the settlement." TWF now appeals from the denial of its motion for summary judgment.[3]

## II.

In reviewing a grant of summary judgment, we apply the same standard as the motion judge. *EMC Mortg. Corp. v. Chaudhri,* 400 *N.J.Super.* 126, 136, 946 *A.*2d 578 (App.Div.2008) (*citing Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007)). We first determine whether the moving party has demonstrated there were no genuine disputes as to material facts. *Atl. Mut. Ins. Co. v. Hillside Bottling Co., Inc.,* 387 *N.J.Super.* 224, 230, 903 *A.*2d 513 (App.Div.), *certif. denied,* 189 *N.J.* 104, 912 *A.*2d 1264 (2006).

[A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the nonmoving party.

[*Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).]

---

3 Generally, interlocutory orders are appealable only if there is a cognizable appeal from a final judgment resolving all issues as to all parties. *N.J. Sch. Constr. Corp. v. Lopez,* 412 *N.J.Super.* 298, 308, 990 *A.*2d 667 (App.Div.2010). A final judgment entered pursuant to the parties' consent is generally not reviewable as of right. *Ibid.; see also CPC Int'l, Inc. v. Hartford Accident & Indem. Co.,* 316 *N.J.Super.* 351, 365–66, 720 *A.*2d 408 (App.Div.1998) (explaining that plaintiff cannot voluntarily dismiss remaining claims without prejudice to make interlocutory summary judgment order appealable as of right), *certif. denied,* 158 *N.J.* 73, 726 *A.*2d 937 (1999). We have recognized, however, that "a consent judgment could reserve the right of a party to appeal an interlocutory order by providing that the judgment would be vacated if the interlocutory order were reversed on appeal[.]" *Janicky v. Point Bay Fuel, Inc.,* 410 *N.J.Super.* 203, 207, 981 *A.*2d 96 (App.Div.2009).

We then decide "whether the motion judge's application of the law was correct." *Atl. Mut. Ins., supra,* 387 *N.J.Super.* at 231, 903 *A.*2d 513.

 In this case, the facts were essentially undisputed and the judge's decision was based upon the legal conclusions he drew from those facts. We owe no deference to the judge's interpretation of the law. *Ibid.* (citing *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995)).

(a)

 We start by reviewing the statutory framework of the Workers' Compensation Act (the WCA), *N.J.S.A.* 34:15–1 to –128. The WCA provides that "[w]hen personal injury is caused to an employee by accident arising out of and in the course of his employment, ... he shall receive compensation ... from his employer." *N.J.S.A.* 34:15–1.[4] "When employer and employee ... by agreement ... accept the provisions of [the WCA,] compensation for personal injuries to ... such employee ... shall be

---

[4] As the Court noted in *Naseef v. Cord, Inc.,* 48 *N.J.* 317, 322, 225 *A.*2d 343 (1966),

New Jersey has what is commonly known as an "elective system" of workmen's compensation, 2 *Larson's Workmen's Compensation Law,* §§ 67.00–67.10, *pp.* 146–148 (1961). Under this system either the employer or employee may reject the ordinary system of compensatory non-fault liability (in New Jersey, Article II coverage [*N.J.S.A.* 34:15–7 to –35.22]), thus leaving the employer liable to his employee for only common-law negligence (in New Jersey, Article I coverage [*N.J.S.A.* 34:15–1 to –6]).

In the case of Article I coverage, the employee's claim may not be defeated by the defenses of ordinary contributory negligence (*see N.J.S.A.* 34:15–1), assumption of risk (*see N.J.S.A.* 34:15–2; *McGrath v. American Cyanamid Co.,* 41 *N.J.* 272 [196 *A.*2d 238] (1963)), or negligence of a fellow-employee (*see N.J.S.A.* 34:15–2). Most employers are thereby led to accept liability without fault according to Article II of the Workmen's Compensation Act.

In this case, the distinction between Article I and Article II coverage is not at issue, and, for purposes of this opinion, we alter specific references in the WCA to Article II to either generic references to the statute or substitute specific citations to portions of the statute.

made by the employer without regard to the negligence of the employer." *N.J.S.A.* 34:15–7. As the Court recently explained:

New Jersey's long-standing and comprehensive statutory scheme of workers' compensation coverage is "designed to establish a no fault system of compensation for workers who are injured or contract a disease in the course of employment." *Brock v. Pub. Serv. Elec. & Gas Co.,* 325 *N.J.Super.* 582, 588 [740 *A.*2d 167] (App.Div.1999), *certif. denied,* 163 *N.J.* 77 [747 *A.*2d 285] (2000). We have consistently held that our statutory workers' compensation scheme "is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." *Torres v. Trenton Times Newspaper,* 64 *N.J.* 458, 461 [317 *A.*2d 361] (1974).

[*Fitzgerald v. Tom Coddington Stables,* 186 *N.J.* 21, 30, 890 *A.*2d 933 (2006) (citation omitted).]

By agreeing to the statutory scheme, "the parties ... [surrender] their rights to any other method, form or amount of compensation." *N.J.S.A.* 34:15–8. *N.J.S.A.* 34:15–8 immunizes the employer and co-employees of the injured worker, "except for intentional wrong[s]." *Ibid.* "[T]he *quid pro quo* ... [i]s that employees ... receive assurance of relatively swift and certain compensation payments, but ... relinquish their rights to pursue a potentially larger recovery in a common-law action." *Millison v. E.I. du Pont de Nemours & Co.,* 101 *N.J.* 161, 174, 501 *A.*2d 505 (1985); *see also Crippen v. Cent. Jersey Concrete Pipe Co.,* 176 *N.J.* 397, 411, 823 *A.*2d 789 (2003) (Verniero, J., concurring) ("[The WCA] seeks to protect injured workers from becoming mired in costly and protracted litigation that could delay payment of their claims.").

On the opposite side of the bargain, although "the employer assumes an absolute liability[,] [h]e gains immunity from common-law suit, even though he be negligent, and is left with a limited and determined liability in all cases of work-connected injury." *Dudley v. Victor Lynn Lines, Inc.,* 32 *N.J.* 479, 489, 161 *A.*2d 479 (1960).

However, "[w]here *a third person is liable* to the employee ... for an injury or death, the existence of a right of compensation from the employer ... shall not operate as a bar to the action of the employee." *N.J.S.A.* 34:15–40 (emphasis added). "The words

'third person' as used in this section include corporations, compa-
nies, associations, societies, firms, *partnerships* and joint stock
companies as well as individuals." *Ibid.* (emphasis added). The
importance of the third-party cause of action was explained by the
Court as follows:

> Good reason exists for preserving the right of an injured worker to sue a third
> person to the maximum extent that such actions are consistent with workers'
> compensation laws. The fixed dollar ceiling on benefits under the workers'
> compensation laws are the result of a trade-off of certain liability of the employer
> for reduced awards for the employee. Injured workers are entitled not only to
> recovery against employers under workers' compensation laws, but also against
> third parties under tort law.

> [*Lyon v. Barrett,* 89 *N.J.* 294, 305, 445 *A.*2d 1153 (1982).]

*N.J.S.A.* 34:15–40 also incorporates a series of provisions where-
by the employer is subrogated to the employee's rights of recov-
ery against a third-party tortfeasor to the extent that payments
were made by the employer, or its insurer, under the WCA. The
Court has explained the legislative scheme as follows:

> The employer renders itself absolutely liable for the scheduled and fixed compensa-
> tion liability to the injured employee regardless of absence of negligence on its part
> or the contributory negligence of the employee. The employee, for his part, is
> guaranteed recovery for his common-law damages against contributing third-party
> tortfeasors or for his compensation award, whichever is greater, but he may not
> duplicate these recoveries. But the act is neutral insofar as the third-party
> tortfeasor is concerned, leaving him with his common-law liability to the injured
> employee, or, if the latter has been recompensed therefor to any extent by
> compensation payments, to the statutorily subrogated employer who has made
> those payments.

> [*Schweizer v. Elox Div. of Colt Indus.,* 70 *N.J.* 280, 287–88, 359 *A.*2d 857 (1976).]

At issue in this case is the interplay between the WCA and the
Revised Uniform Partnership Act, *N.J.S.A.* 42:1A–1 to –56 (the
RUPA), enacted in New Jersey in 2000, and caselaw decided
under its statutory predecessor, the Uniform Partnership Act (the
UPA), formerly *N.J.S.A.* 42:1–1 to –49.[5] Under the RUPA, while
"relations among the partners and between the partners and the

---

[5] Although Time Warner and TWF were organized under Delaware law, the
parties have argued that New Jersey law applies and have not raised any
conflicts of law issue.

partnership are governed by the partnership agreement," *N.J.S.A.* 42:1A–4(a), "[t]he partnership agreement shall not ... restrict [the] rights of third parties under th[e] [RUPA]." *N.J.S.A.* 42:1A–4(b)(7).

In general, a partner is the agent of the partnership. *N.J.S.A.* 42:1A–13(a). Therefore, a "partnership is liable for loss or injury ... as a result of a wrongful act or omission. of a partner acting in the ordinary course of business of the partnership or with the authority of the partnership." *N.J.S.A.* 42:1A–17(a). And, generally speaking, partners are jointly and severally liable for all obligations of the partnership. *N.J.S.A.* 42:1A–18(a).

However, the RUPA places limits upon this liability. "A judgment against a partnership is not by itself a judgment against a partner," and "[a] judgment against a partnership shall not be satisfied from a partner's assets unless there is also a judgment against the partner." *N.J.S.A.* 42:1A–19(c). Only in limited circumstances may a judgment creditor of a partner levy on that partner's assets "based on a claim against the partnership." *N.J.S.A.* 42:1A–19(d). One such exception is when the partner "is personally liable for the claim," *ibid.*, because, for example, "liability is imposed on the partner by law or contract independent of the existence of the partnership." *N.J.S.A.* 42:1A–19(d)(5).

Significantly for the purposes of this case, the RUPA provides that "[a] partnership is an entity distinct from its partners," *N.J.S.A.* 42:1A–9(a), and may be sued separately from its partners in the same action, *N.J.S.A.* 42:1A–19(b). The UPA contained no similar provisions.

The UPA modified the common law, which "did not recognize the separate existence of partnerships," but rather viewed the partnership as simply an aggregate of its individual partners. *X–L Liquors, Inc. v. Taylor,* 17 *N.J.* 444, 454–55, 111 *A.*2d 753, *rev'd on other grounds, O'Connor v. Altus,* 67 *N.J.* 106, 128, 335 *A.*2d 545 (1975). "Although the [UPA] did not make partnerships jural persons for all purposes, it did treat them as such for many purposes." *Id.* at 455, 111 *A.*2d 753; *see also* 2–19 John R.

Mackey II, et al., *New Jersey Corporations and other Business Entities* § 19.04[2] (3d ed. 2010) ("The original [UPA], adopted in the early part of the twentieth century, retained the common law aggregate theory but it adopted some aspects of the entity theory."). "The ... [RUPA] resolved the conflict by specifically adopting the entity theory. It provides that 'a partnership is an entity distinct from its partners.'" *Ibid.* (quoting *N.J.S.A.* 42:1A–9(a)).

Commentators have also underscored the RUPA's intention to move away from the aggregate model of partnerships toward adoption of the entity theory. This philosophical evolution materialized predominantly because the entity theory was "much more functional" than its aggregate counterpart and "reflect[ed] the judgment that business people tend[ed] to perceive that many partnerships operate[d] as stable organizations notwithstanding the departure of particular individuals." Donald J. Weidner, *Three Policy Decisions Animate Revision of Uniform Partnership Act*, 46 *Bus. Law.* 427 (1991). The entity concept provided a simpler approach to handling legal actions by and against the partnership. Taylor Simpson–Wood, *Has the Seductive Siren of Judicial Frugality Ceased to Sing?: Dataflux and Its Family Tree*, 53 *Drake L.Rev.* 281, 344 (2005). Specifically, Simpson–Wood noted:

> Originally, the common law employed the aggregate theory of partnership. Under this theory, a general partnership was an aggregation of individuals. Therefore, it was considered to be a relationship between individuals engaged in business as co-owners who jointly owned property and who were jointly liable for partnership debts or obligations. Over time, the aggregate theory proved to be unworkable. As a result, the [RUPA] adopted the entity theory of partnership. Under this concept, the partnership is viewed as "a legal person [entirely] separate from its partners" with the power to sue and be sued in its own name.
>
> [*Ibid.* (second alteration in original) (quoting in part Gary S. Rosin, *The Entity–Aggregate Dispute: Conceptualism and Functionalism in Partnership Law*, 42 *Ark. L.Rev.* 395, 396 (1989)).]

Other commentators have specifically noted the intent of the drafters of the RUPA to finally resolve a long and tortuous debate as to which theory more accurately described a partnership's functions and liabilities. *See* Russell C. Smith, *Comment: How*

*the Uniform Partnership Act Determines Ultimate Liability For A Claim Against A General Partnership And Provides For the Settling Of Accounts Between Partners,* 17 *Campbell L. Rev.* 333, 349 (1995) (emphasizing that the UPA's "silen[ce] on th[is] question" triggered a "historical[ ] dispute[ ]" and the RUPA's need to reinforce the "trend . . . toward the entity theory"); Donald J. Weidner, *The Revised Uniform Partnership Act: The Reporters' Overview,* 49 *Bus. Law.* 1 (1993) (acknowledging the Drafting Committee's recognition that because the entity theory "ar[o]se in . . . virtually every situation" affecting a partnership, it should be adopted); Paula J. Dalley, *To Whom It May Concern: Fiduciary Duties and Business Associations,* 26 *Del. J. Corp. L.* 515, 533 (2001) (noting that "scholars were apparently relieved that the entity question had finally been settled" by RUPA's enactment).

In this case, TWF's essential argument is that it is entitled to the immunity bestowed upon Time Warner by *N.J.S.A.* 34:15-8 "because . . . partners share each others' and the partnership's liabilities, [and] the partners also share each others' and the partnership's immunities . . . from suit."

### (b)

Although that proposition has never been adopted by a reported decision in this state, several cases have addressed the immunity provided by *N.J.S.A.* 34:15-8 in the context of potential third-party tort liability of an entity closely-related to the plaintiff's employer.

For example, in *Lyon, supra,* 89 *N.J.* at 298, 445 *A.2d* 1153, plaintiff was employed by a law practice organized as a professional corporation wholly-owned by defendant, who, in turn, owned the premises and leased them to his corporation. After suffering a workplace injury, plaintiff recovered workers' compensation from the corporation. *Ibid.*

Thereafter, she instituted a third party negligence action pursuant to *N.J.S.A.* 34:15–40 against [defendant] individually as landlord of the building. The issue [wa]s whether an employee who ha[d] recovered a workers' compensation award against a corporate employer may maintain such a negligence action for the same injuries against the individual who is the sole shareholder of the corporation.

[*Ibid.*]

The trial court concluded "that there was no difference between [the defendant] as an individual and [the corporation]. Therefore, ... the statutory immunity from suit provided to the corporation should extend also to [the defendant]." *Id.* at 299, 445 *A.*2d 1153. We affirmed. *Ibid.*

The Court reversed, noting "a corporation is an entity separate from its stockholders," and "one who accepts the benefits of incorporation must also accept the burdens that flow from the use of a corporate structure." *Id.* at 300, 445 *A.*2d 1153 (citations omitted). In dicta, however, the Court noted:

> By contrast ... [p]artners are not entities separate from the partnership, but are personally liable for partnership obligations, including the obligation to pay workers' compensation benefits. The partner and the partnership are one, and as long as the employer and the tort-feasor are identical, the injured employee is limited to an action under the workers' compensation laws.
>
> [*Id.* at 303, 445 *A.*2d 1153 (citing *Mazzuchelli v. Silberberg,* 29 *N.J.* 15, 21–23, 148 *A.*2d 8 (1959)).]

*Mazzuchelli* presented facts that are the converse of this case. The plaintiff there was employed by a partnership consisting of the defendant and his wife. *Mazzuchelli,* supra, 29 *N.J.* at 19, 148 *A.*2d 8. While in the scope of his employment, the plaintiff was injured in a motor vehicle accident as a passenger in a car driven by the defendant. *Ibid.* After receiving workers' compensation benefits from the partnership, he brought suit against the defendant individually. *Ibid.* Plaintiff contended "that a partner is a third person within the meaning of the [WCA] preserving the common law claim of an employee against third persons, [*N.J.S.A.*] 34:15–40." *Ibid.*

The Court hypothesized that "[t]o sustain th[is] ... proposition it must be found that the partnership is a jural entity distinct from the partners and is the sole employer within the meaning of the Compensation Act." *Ibid.* Interpreting the UPA, the Court concluded that "employees, although in a sense employees of the partnership with respect to its assets, are employees of the individual partners." *Id.* at 22, 148 *A.*2d 8.

The *Mazzuchelli* Court cited with approval our earlier holding in *Parker v. Zanghi*, 45 *N.J.Super.* 167, 131 *A.*2d 802 (App.Div. 1957). In *Parker*, we interpreted the Pennsylvania Workmen's Compensation Act to bar a suit brought by an employee of a partnership against an individual partner. *Id.* at 169, 131 *A.*2d 802. We concluded:

> even though ... the partnership is itself the employer under the Pennsylvania Workmen's Compensation Act, nevertheless in view of the law rendering the partners liable for the workmen's compensation, the act should be construed as requiring the employee to surrender any common law cause of action in tort, which he holds against the partners, or either of them, because of a compensable injury.

[*Id.* at 175, 131 *A.*2d 802.]

The *Mazzuchelli* Court distinguished our decision in *Felice v. Felice*, 34 *N.J.Super.* 388, 112 *A.*2d 581 (App.Div.1955). In *Felice*, the plaintiff was the wife of one of the partners in the partnership and suffered a workplace injury while employed by the partnership. *Id.* at 389–90, 112 *A.*2d 581. Her workers' compensation petition was dismissed because she was not employed pursuant to a contract for employment recognized by the WCA, since contracts of employment between spouses were not cognizable at common law. *Id.* at 390, 112 *A.*2d 581 (citing *Bendler v. Bendler*, 3 *N.J.* 161, 168, 171, 69 *A.*2d 302 (1949)).

However, in reversing, we noted that "[f]or purposes of workmen's compensation an employee of a partnership cannot be said to be an employee of an individual member thereof." *Id.* at 392, 112 *A.*2d 581. We concluded "that under the present state of the law the [WCA] has personified the partnership, ... for purposes of accomplishing the beneficent social intention of the Legislature, and that [the plaintiff's] contract of employment is with that jural person and not with her husband individually." *Id.* at 393, 112 *A.*2d 581.

The *Mazzuchelli* Court construed our holding in *Felice* as limited to the facts presented, noting, "[t]he result was a fair adjustment between a wife's ancient inability to sue her husband for tortious injury and the statutory policy that the consequences

of industrial injury be deemed to be a business expense." *Mazzuchelli, supra,* 29 *N.J.* at 24, 148 *A.*2d 8.

Lastly, in *Kalnas v. Layne of New York Co.,* 173 *N.J.Super.* 492, 495, 414 *A.*2d 607 (App.Div.1980), the plaintiff was employed by Emcee Construction Company, Inc., which had entered into a joint venture agreement with the defendant to bid on and construct a water treatment plant. The plaintiff was seriously injured while doing site improvements, received workers' compensation benefits from Emcee, and thereafter sued defendant. *Id.* at 495–96, 414 *A.*2d 607. The plaintiff's theory regarding the defendant's liability was that it "had an independent obligation . . . to assure him a safe place to work." *Id.* at 496, 414 *A.*2d 607.

The trial judge dismissed the plaintiff's suit at trial.

[H]e concluded that the fact of the joint venture relationship between [the defendant] and plaintiff's employer, Emcee, cloaked [the defendant] with the same mantle of immunity under the [WCA] as Emcee itself was entitled to. This conclusion was based on his perception that the essential attributes of a joint venture are the same as those of a partnership. He noted that an employee of a partnership is barred by the exclusivity of the workers' compensation remedy from bringing a third-party action against either the partnership or any of its partners individually. *See, e.g., Mazzuchelli v. Silberberg,* 29 *N.J.* 15, 21–24 [148 *A.*2d 8] (1959). . . . He therefore reasoned that because of the partnership nature of the joint venture, an employee of one of the joint venturers is also barred by the exclusivity of the workers' compensation remedy from bringing a third-party action against all joint venturers whether or not his direct employer.

[*Id.* at 496, 414 *A.*2d 607 (citations omitted).]

However, we rejected that analysis, concluding, "[t]here is apparently no authority in this State addressing the issue of the availability of a third-party action against a joint venturer and we have substantial doubt that the partnership analogy is dispositive. In the typical partnership situation the partnership is, . . . both formalistically and functionally, the employer." *Id.* at 496–97, 414 *A.*2d 607.

Instead, we noted that the WCA defined the terms "employer" and "employee" as being synonymous with "master" and "servant." *Id.* at 497, 414 *A.*2d 607 (citing *N.J.S.A.* 34:15–36). We continued:

> In our view ... whenever there is a dispute as to whether there is in fact an employment relationship encompassed by the act, and particularly where the circumstances of the relationship depart from traditional modes, the resolution of the question requires a factual analysis of all of the indicia of the relationship in order to determine if it is truly that of master-servant. And in order to constitute such a relationship, it must be characterized by such elements as the employer's supervisory power, his right to control the activities of the employee, his right to terminate the relationship, his payment to the employee of regular wages for services, and his provision of tools and equipment and facilities. . . .
>
> Thus, it is clear that while the joint venturers themselves are, *inter se*, essentially partners, that partnership characterization does not necessarily and for all purposes determine either the relationship of each of the joint venturers to the employees of the others nor of the joint venture as an entity to the joint venturers' employees. Whether each joint venturer can be deemed the employer of all the employees engaged in the work of the joint enterprise must clearly depend on the particular facts and circumstances surrounding the joint venture.
>
> [*Id.* at 497, 414 *A*.2d 607 (citations omitted).]

We concluded, however, that the plaintiff had failed to establish a prima facie case of negligence against the defendant, and therefore affirmed the dismissal of his complaint which "moot[ed] resolution of the employment relationship question." *Id.* at 498, 414 *A*.2d 607.

## (c)

We are urged to consider authority from our sister states that has addressed the issue under facts more analogous to those presented by this case. Defendant, for example, cites *Currier v. Amerigas Propane, L.P.*, 144 *N.H.* 122, 737 *A*.2d 1118 (1999), and *Watson v. G.C. Associates Ltd. Partnership*, 100 *Nev.* 586, 691 *P*.2d 417 (1984), to support the proposition that a partnership is immune from suit if one of its partners—the employer of the injured worker—is immune under workers' compensation laws.

In *Currier, supra*, 737 *A*.2d at 1119, plaintiff was employed by a general partner in a limited partnership, recovered worker's compensation from the general partner's insurer and then sued the limited partnership in tort. The New Hampshire Supreme Court held that "it would be unwise to create an artificial distinction that would effectively abrogate a basic tenet of our Workers' Compensation Law regarding employer immunity and would treat the

defendant as a separate entity, subject to common law liability, where its general partner is protected under the act." *Id.* at 1121.

In *Watson, supra,* 691 *P.*2d at 417–18, the plaintiff was injured during the course of her employment and sued the partnership and individual partners who comprised the landlord of the premises. The plaintiff conceded that the individual partners were immune from suit under Nevada's workers' compensation law because they were "co-employees." *Id.* at 418. Nevertheless, the plaintiff asked the court "to address the issue of the common law liability of the partnership, as if it were an entity independent of its partners." *Ibid.* The court declined to consider the issue so as "to avoid creating an artificial distinction which would have the effect of abrogating the policy of our workmen's compensation statute regarding immunity of employers or co-employees." *Id.* at 419. In short, the court was "unwilling to treat the respondent partnership ... as a separate entity, subject to common law liability." *Ibid.*

Other states, however, have reached different results. In *Salswedel v. Enerpharm, Ltd.,* 107 *N.M.* 728, 764 *P.*2d 499, 500 (App.1988), the employer was one of three corporations that formed the defendant partnership and leased its premises from the partnership. The plaintiff was injured while at work in the parking lot of the premises; her suit was dismissed based upon the immunity provisions of New Mexico's workers' compensation law. *Ibid.*

The New Mexico Court of Appeals concluded that "resolution of the question of whether [the defendant] can be considered [the] plaintiff's employer for purposes of [the workers' compensation law] depends not so much upon the relationship between [the defendant] and [the employer], but rather upon the relationship between [the defendant] and [the] plaintiff." *Id.* at 501. The court held that "immunity from liability is strictly construed, and is not to be extended from the individual partner to the partnership." *Id.* at 503 (citing *Mathews v. Wosek,* 44 *Mich.App.* 706, 205 *N.W.*2d 813 (1973); *Eule v. Eule Motor Sales,* 34 *N.J.* 537, 170

*A*.2d 241 (1961); *Restatement (Second) of Agency* § 217(b) (1958)).[6] The court concluded, "We believe the question of whether the partnership and the other partners should also be deemed immune as a matter of law is a policy question. We answer the question in favor of the worker." *Ibid.* (citations omitted) (relying upon *Eule, supra,* and *Lyon, supra* ).

In *Guerino v. Depot Place Partnership,* 273 *Ill.App.*3d 27, 209 *Ill.Dec.* 870, 652 *N.E.*2d 410, 412, *appeal denied,* 163 *Ill.*2d 556, 212 *Ill.Dec.* 419, 657 *N.E.*2d 620 (1995), the plaintiff suffered a workplace injury on premises leased from the defendant partnership by his employer corporation. Two of the partners were officers in the corporation. *Ibid.* On cross-appeal, the partnership argued that the exclusivity of the workers' compensation law barred the plaintiff's suit. *Ibid.*

The court concluded that "[t]he question of whether the Partnership ... was immune turn[ed] on whether a partnership is a legal entity distinct from its individual members." *Id.,* 209 *Ill.Dec.* 870, 652 *N.E.*2d at 414. After reviewing Illinois' version of the UPA, the court held that "[i]mmunity from liability is to be strictly construed and is not to be extended from the individual partner to the partnership." *Ibid.* (citing *Salswedel, supra,* 764 *P.*2d at 502). "[G]enerally a principal is not entitled to rely on the immunity granted its agent." *Ibid.* (citing *Restatement (Second), supra,* § 217(b)).

The courts in *Salswedel* and *Guerino,* however, both recognized that "under some circumstances, the partnership and partners must be considered one entity." *Salswedel, supra,* 764 *P.*2d at

---

[6] That section of the *Restatement (Second)* provided in relevant part:

In an action against a principal based on the conduct of a servant in the course of employment:

. . . .

(b) The principal has no defense because of the fact that:

. . . .

(ii) the agent had an immunity from civil liability as to the act.

The *Restatement (Third) of Agency* (2006) did not adopt a similar provision.

503; *see also Guerino, supra,* 209 *Ill.Dec.* 870, 652 *N.E.*2d at 415. Both courts cited *Cipriano v. FYM Associates,* 117 *A.D.*2d 770, 499 *N.Y.S.*2d 101 (1986), as an example. In *Cipriano,* the employer-general partner was expressly authorized to construct the improvements on the premises owned by the defendant partnership, kept the partnership records and had its expenses reimbursed by the partnership. *Id.* at 102. Under those circumstances, the employer "was essentially the alter ego of [the] defendant partnership," which was immune from suit under New York's workers' compensation law. *Ibid.*

(d)

██ We return to the case at hand and note initially, and briefly, what issues are not presented. We do so as a caveat, lest our ultimate conclusion and holding be misconstrued or read too broadly.

First, defendant has never argued that it is essentially the same entity as Time Warner, i.e., its alter ego for purposes of the WCA. We assume this is so because TWF agreed to defend and indemnify the property owner, Bonanno Real Estate Group, and, in essence, has answered for Bonanno's alleged negligence. Jurisprudence developed under the WCA has extensively addressed claims that a related entity is entitled to the immunity provided by *N.J.S.A.* 34:15–8 because the employer and that entity were essentially one and the same. *See e.g., Volb v. G.E. Capital Corp.,* 139 *N.J.* 110, 121–126, 651 *A.*2d 1002 (1995) (discussing the issue extensively and surveying state and federal cases); *see also, Salswedel, supra,* and *Guerino, supra.* We need not consider the issue in this case.

Conversely, from plaintiff's perspective, this case does not involve the so-called "dual persona" or "dual capacity" doctrine. *See, e.g.,* 6–113 Lex K. Larson, *Larson's Workers' Compensation Law* § 113.01[1] (Matthew Bender rev. 2010) ("An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—it possesses a second persona so completely independent from and unrelated to its status as employer that by estab-

lished standards the law recognizes that persona as a separate legal person."); *see also Doe v. St. Michael's Med. Ctr.*, 184 *N.J.Super.* 1, 8–9, 445 *A.*2d 40 (App.Div.1982) (rejecting the doctrine's application in New Jersey). Once again, since TWF essentially stands in the shoes of Bonanno, there is no issue regarding a unity of identity between Time Warner and TWF.

Lastly, we are not called upon to consider whether TWF was actively negligent. *See, e.g., Kalnas, supra*, 173 *N.J.Super.* at 498, 414 *A.*2d 607 (dismissing as to the joint venturer because of a lack of negligence not because of the immunity provided by *N.J.S.A.* 34:15–8).

In the end, this case devolves to consideration of two issues: 1) the nature of the relationship between a general partner and its partnership; and 2) the public policies fostered by the WCA, both through the immunity provided by *N.J.S.A.* 34:15–8, and the reserved right of an injured worker to commence a common law suit against a third person, *N.J.S.A.* 34:15–40.

Absent the out-of-state cases from New Hampshire, Nevada and New York cited above, TWF marshals no precedent to support the proposition that a statutory immunity granted to one partner necessarily flows to the general partnership. In fact, in other contexts, our courts have held to the contrary.

In *Eule, supra*, 34 *N.J.* at 538, 170 *A.*2d 241, for example, the plaintiff was married to a general partner of the defendant partnership and was injured while a passenger in a partnership-car driven by her husband. The defendant partnership was granted summary judgment because 1) the plaintiff's husband was immune from suit at common law; 2) any suit against the partnership was "in effect a forbidden suit against the husband because each partner individually rather than the partnership 'entity' is liable for the tort"; and 3) "even if the partnership [were] liable, . . . a judgment against it would invade the husband's interest in its assets and further the husband would be chargeable fully if his partner sought indemnification." *Id.* at 539, 170 *A.*2d 241. However, the Court rejected that reasoning on policy grounds, con-

cluding that "the husband's partner and the partnership are chargeable with the husband's wrong." *Id.* at 545, 170 *A.*2d 241.

In *Volb, supra,* 139 *N.J.* at 114, 651 *A.*2d 1002, the plaintiff's decedent was killed by another worker in a motor vehicle accident at a construction site. The decedent was employed by J.H. Reid; the driver, Lee, was employed by an affiliate, T.D.E., but performing work for J.H. Reid on the day in question. *Ibid.* The same four principals owned both companies. *Ibid.* After collecting workers' compensation benefits from J.H. Reid, the administratrix of plaintiff's estate (his wife) sued Lee and T.D.E. in negligence. *Id.* at 114–15, 651 *A.*2d 1002. The trial court granted summary judgment to the defendants based upon the exclusivity provisions of the WCA, and we affirmed. *Id.* at 115, 651 *A.*2d 1002. The Court reversed. *Id.* at 132, 651 *A.*2d 1002.

Initially, the Court determined that Lee was immune from suit "because Volb was a regular employee of J.H. Reid and Lee was a special employee of J.H. Reid," and "co-workers cannot sue one another for negligence in the workplace." *Id.* at 117, 651 *A.*2d 1002. However, the estate was not barred from suing T.D.E. directly since Volb was not its employee or special employee. *Id.* at 118, 651 *A.*2d 1002. The Court also concluded: "The [WCA] also does not indirectly bar plaintiff's suit by deriving immunity for T.D.E. from Lee's fellow-employee immunity. That the statute immunizes Lee from liability for torts committed against special coworkers such as Volb does not mean that the statute similarly immunizes Lee's employer from such liability." *Ibid.*

The Court explained the rationale as follows:

Although the precise question has not been addressed directly in this state, the uniform holding of the out-of-state cases is entirely consistent with general agency principles familiar to our case law. Thus, "a principal 'may be liable for an act as to which the agent has a personal immunity from suit.'" *Gardner v. Rosecliff Realty Co.,* 41 *N.J.Super.* 1, 7 [124 *A.*2d 30] (App.Div.1956) (quoting *Restatement of Agency* § 217(2) (1933)). As section 217(b) of the *Restatement (Second) of Agency* (1957) currently puts it, "The principal has no defense because of the fact that ... the agent had an immunity from civil liability as to the act." One treatise has explained that "[i]n the case of the immunity, liability has been cut off (against the servant) in a situation where it would ordinarily be afforded under general tort principles, for a reason that simply does not apply to the master." 2 Fowler V. Harper and Fleming James, Jr., *The Law of Torts* § 26.17, at 1426 (1956). In

> short, the Workers' Compensation Act does not indirectly bar the Volb estate's suit against T.D.E., because Lee's fellow-employee immunity does not extend to his employer.
>
> [*Id.* at 121, 651 *A*.2d 1002 (alteration in original).]

We are convinced that in this case, the immunity accorded to Time Warner under the WCA does not, as a matter of general partnership jurisprudence, flow to TWF so as to immunize the partnership from plaintiff's common law negligence claims.

Restricting the statutory immunity provided by *N.J.S.A.* 34:15–8 to Time Warner alone is also entirely consistent with the plain language of the WCA. *See N.J.S.A.* 34:15–40 ("where a third person is liable to the employee ... for an injury ..., the existence of a right of compensation from the employer ... under th[e] [WCA] shall not operate as a bar to the action of the employee."); *ibid.* ("The words 'third person' as used in this section include ... partnerships."). It is also entirely consistent with the policy goals of the WCA. *See Lyon, supra,* 89 *N.J.* at 305, 445 *A*.2d 1153 ("Good reason exists for preserving the right of an injured worker to sue a third person," because "[t]he fixed dollar ceiling on benefits under the workers' compensation laws are the result of a trade-off of certain liability of the employer for reduced awards for the employee.").

The motion judge properly denied summary judgment to defendant.

Affirmed.